**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 06-61677-CIV-MARTINEZ-BANDSTRA**

THOMAS FRANCISCO, individually
and on behalf of all others
similarly situated,

                                                     CLASS ACTION

        Plaintiff,

vs.

NUMISMATIC GUARANTY CORPORATION
OF AMERICA D/B/A NGC,

        Defendant.
_____/

**CLASS COUNSEL'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND**
**PAYMENT OF SERVICE AWARD**

# I.     INTRODUCTION

A $650,000 cash fund has been created to make charitable contributions and to pay the attorneys' fees and expenses awarded by the Court.  In addition, NGC has paid  approximately $25,000 for the cost of claims administration costs that are typically borne by the class and deducted from a cash settlement fund.  Thus, NGC's payment of these costs increases its cash contribution in this settlement to $675,000.  Class Counsel were also able to negotiate significant injunctive relief. The efforts of Class Counsel in achieving this excellent result are detailed in the Declaration of Thomas A. Tucker Ronzetti ("Ronzetti Decl."), filed herewith.

For their efforts in creating this settlement, Class Counsel seek attorney's fees of $ 195,000, a fee of  30% of the cash benefits obtained for the class, with proportionate pro rata interest.  The percentage fee requested is reasonable under well-established Eleventh Circuit precedent, where percentage fees of 20%-30% are routinely awarded in cases of this type.  Class Counsel's request is well below the typical fee award.  Significantly, none of  the class members  has objected to either the settlement or the attorneys' fees requested.

For all the reasons explained below and in the Ronzetti Declaration, Class Counsel submit that the requested fee and expense award in an aggregate amount of $195,000 is fair and reasonable under applicable legal standards and should be approved.

II.     CLASS COUNSEL'S ATTORNEYS' FEE AWARD IS
        APPROPRIATELY BASED ON A REASONABLE PERCENTAGE
        OF THE FUND THEIR EFFORTS CREATED.

Lawyers who recover a "common fund" are entitled to reasonable attorneys' fees from the

fund they created. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). One rationale for such

awards is that "persons who obtain the benefit of a lawsuit without contributing to its cost are

unjustly enriched." *Id.* at 478. The common fund approach is also grounded on a policy of

encouraging counsel to act as "private attorneys general" to vindicate the rights of class members,

most of whom have small individual claims:

> [C]ourts also have acknowledged the economic reality that in order to encourage
> "private attorney general" class actions brought to enforce ... laws on behalf of
> persons with small individual losses, a financial incentive is necessary to entice
> capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to
> devote their time to complex, time-consuming cases for which they may never be
> paid.

*Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).

The proper manner to calculate attorneys' fees is to identify the fund created for the benefit of

the class and to award counsel for the class a reasonable percentage of that fund as an attorneys' fee.

"[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable

percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n v.*

*Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also In re Sunbeam Sec Litig.,* 176 F. Supp.2d

1323,1333 (S.D. Fla. 2001). After carefully weighing the pros and cons of the percentage method

and the lodestar/multiplier method, the Eleventh Circuit concluded:

> After reviewing *Blum*, the [Third Circuit] Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Camden I,* 946 F.2d at 774. Since the Eleventh Circuit has expressly rejected the lodestar/multiplier approach in favor of the percentage of the fund method, the primary question before this Court is the appropriate percentage of the settlement fund to be awarded as attorneys' fees.

The Eleventh Circuit has also observed that "[t]here is no hard fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. However, the Eleventh Circuit stated that "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a "bench mark" percentage fee award which may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775; *see also Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award even higher based on the circumstances of the case); *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (quoting *Camdem I* and explaining 25% of the common fund is the benchmark). Finally, the *Camden I* court indicated that the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as well as the time required to reach a settlement, whether there were substantial objections from class members, non-monetary benefits of the settlement, and the

economics involved in prosecuting a class action are among the factors that may be relevant to a

Court's determination of an appropriate percentage fee. *Camden I*, 946 F.2d at 775.

### III. CONSIDERATION OF ALL RELEVANT FACTORS SUPPORTS A 30% FEE AWARD TO CLASS COUNSEL.

Class Counsel request the Court to award them attorneys' fees of $195,000 (approximately

30% of the value of the cash portion of the settlement), which is inclusive of their expenses of

$6,225.12. This fee request is eminently reasonable given Class Counsel's contingent fee risk, their

financial contribution to the case, fees paid in similar cases, the difficult questions at issue here, the

work in obtaining this result for the Class, the time and labor of counsel, and the reaction of the

Class.

#### A. The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action.

A determination of a fair fee for Class Counsel must include consideration of the contingent

nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact

that the risk of failure and nonpayment in a class action are extremely high. Numerous cases

recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee

award. *Pinto v. Princess Cruise Lines, LLC*, 2007 WL 853431, at *5 (S.D. Fla. Feb. 16, 2007)

(quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) (citation

omitted)); *accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be

compensated only in the event of victory expect and are entitled to be paid more when successful

than those who are assured of compensation regardless of result."); *see also Ressler*, 149 F.R.D. at

656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in

determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*,

803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala.

1986).

In *Behrens v. Wometco Enterprises, Inc.* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899

F.2d 21 (11th Cir. 1990), the court noted that:

> Generally, the contingency retainment must be promoted to assure representation
> when a person could not otherwise afford the services of a lawyer....
>
> A contingency fee arrangement often justifies an increase in the award of
> attorneys' fees. This rule helps assure that the contingency fee arrangement endures.
> If this "bonus" methodology did not exist, very few lawyers could take on the
> representation of a class client given the investment of substantial time, effort, and
> money, especially in light of the risks of recovering nothing.

*Id*. (citations omitted) at 548. *See also, In re Sunbeam*, 176 F. Supp. 2d at 1335.

In addition, success before a jury in complex litigation is highly unpredictable. As one court

observed in another class action: "It is known from past experience that no matter how confident one

may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas.*

*Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

The risk of succeeding at trial on liability issues is significant enough. However, the history

of class action litigation is replete with cases in which plaintiffs succeeded at trial on liability, but

recovered no damages or very small damages at trial or after appeal. *See, e.g., United States*

*Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983), (judgment was remanded for new trial and damages). *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974), illustrates the risks faced by Class Counsel. *Eisen* was brought as an antitrust class action. After two trips to the Second Circuit and one to the Supreme Court, plaintiffs and the putative class and their counsel recovered nothing.

Class Counsel have received no compensation during the course of this litigation and have also incurred significant expenses in litigating on behalf of the class, none of which would have been recovered if the case was not successfully concluded. From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the class and hence no compensation. Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. Although Class Counsel have successfully concluded the litigation, this result was not foreseeable at the outset. The relevant risks must be evaluated from the standpoint of plaintiff's counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight. The financial risks borne by Class Counsel fully support the appropriateness of the fee requested.

**B.  The Requested Fees Reflect the Market Rate in Other Complex, Contingent Litigation.**

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 2007 WL 853431, at *6.  Individual clients often recognize that they lack the expertise or time to monitor their attorneys' performance.  Thus, they select a compensation formula -  the contingent fee - that automatically aligns their attorneys' interest with their own.

In private litigation, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients".  *See Pinto*, 2007 WL 853431, at *6 (citing *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984-82 Trade Cas. (CCH) &66,234, at 66,995 (N.D. Ill. 1984) ("Contingent fee arrangements in non-class action damage lawsuits are the simple method of paying the attorney a percentage of what is recovered for the client.  The more the recovery, the more the fee.  The percentages agreed on vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial)).  These percentages are the prevailing market rates throughout the United States for contingent representation — but not necessarily in big case litigation.

National Economic Research Associates, an economics consulting firm, conducted surveys in 1995 and 1996 of fee awards in class actions.  Using data from 433 class actions, the study reports

the following: "Regardless of case size, *fees average approximately 32 percent of the settlement*." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) (emphasis added). Another study released in 1996 focused on class actions in four federal district courts: the Southern District of Florida, the Northern District of California, the Eastern District of Pennsylvania, and the Northern District of Illinois. The Federal Judicial Center Study reported findings very similar to the NERA study: "*Median rates ranged from 27% to 30%*. Most fee awards in the study were between 20% and 40% of the gross monetary settlement." Thomas E. Willging, Laural L. Hooper, and Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* at 69 (Federal Judicial Center 1996) (emphasis added).

In making a determination of what constitutes a fair percentage fee, this Court should be guided by such awards. As the Eleventh Circuit stated in *Camden I*: "The majority of common fund fee awards fall between 20% to 30% of the fund." *Id*. at 774 (citing 1 Herbert B. Newberg, *Attorney Fee Awards* §2.08, at 51 (1986)). The court went on to note: "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded. *Camden I*, 946 F.2d at 774-75. In *Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992), Judge Nimmons, Jr. reviewed fee awards in similar case citing, among other cases, *Zinman v. Aemco Corp.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) &96,325 (E.D. Pa. 1978) (fee equal to 50% of recovery);

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (fee equal to 40% of recovery); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981) (fee equal to 36.2%); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) (fee equal to 34%); *Bello v. Integrated Resources, Inc.*, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) &95,731, at 98,471 (S.D.N.Y. 1990) (holding that the common range of fees is 20-50 percent). Many recent decisions in this Circuit have awarded attorneys' fees similar to or in excess of the percentage sought here, further confirming the fairness and reasonableness of the requested fee.[1]

### C.        The Novelty and Difficulty of the Questions at Issue

Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See, e.g., Johnson*, 488 F.2d at 718. Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome. This case was no exception and involved challenging liability and damages

---

[1]        *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (awarding 33 1/3%); *Diaz v. Hillsborough County Hosp. Authority*, 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000) (awarding 30%); *see also Tapken v. Brown,* Case No. 90-0691-CIV-Marcus (S.D. Fla. 1995) (awarding 33%); *In re Int'l Recovery Corp. Sec. Litig.*, Case No. 92-1474-CIV-Atkins (S.D. Fla. 1994) (fee award represented 30% of class benefit); *In re Sound Advice, Inc. Sec. Litig.,* Case No. 92-6457-CIV-Ungaro-Benages (S.D. Fla. 1994) (awarding 30%); *In re Belmac Corp. Sec. Litig.,* Case No. 92-1814-CIV-T-23-(C) (M.D. Fla. 1994) (awarding 31%); *Holloway v. Chapnick*, Consol. Case No. 89-6572-CIV-Paine (S.D. Fla. 1994) (awarding 30%); *In re Perfumania, Inc. Sec. Litig.*, Case No. 92-1490-CIV-Marcus (S.D. Fla. 1993); (awarding 30%); *In re Royce Lab., Inc. Sec. Litig.*, Case No. 92-0923-CIV-Moore (S.D. Fla. 1993) (awarding 30%); *Kaser v. Swann*, Case No. 90-607-CIV-Orl-3A18 (M.D. Fla. 1993) (awarding 30%); *In re Home Shopping Network Sec. Litig.*, Case No. 87-428-T-13(A) (M.D. Fla. 1991) (awarding 33%).

issues. Had this settlement not been achieved, difficult issues would be raised in connection with plaintiff's efforts to prove NGC's liability and any resulting damages. These include lack of standing, the applicability of the FDUTPA to a national class, the definition of "First Strikes" provided by NGC on its website, and the amount of loss, if any, sustained by class members as a result of purchasing coins with the "First Strikes" designation. These complex factual and legal questions were and would have continued to be the subject of fierce debate between Class Counsel and NGC's counsel. Given the difficulties presented and overcome through this settlement, the fee requested is more than reasonable.

### D.     The Skill, Experience and Reputation of Class Counsel

The lawyers who have litigated for the Class have extensive experience in complex litigation. The standing and qualifications of Class Counsel are set forth in the Declarations submitted herewith and demonstrate that Class Counsel have been involved several complex cases. To litigate a case such as this requires counsel highly trained in class action matters and in the specialized issues the case presents.

Moreover, in assessing the quality of representation by the Class Counsel, the Court also should consider the quality of the opposition. *See, e.g., Camden I,* 946 F.2d at 772 n.3; *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Angoff v. Goldfine*, 270 F.2d 185, 192 (1st Cir. 1959). NGC is represented by one of the largest law firms in South Florida,

as well as experienced New Jersey counsel. These firms had vast resources at their disposal and consistently took tough positions to promote the interests of their client.

### E.     The Result Achieved for the Class

"The result achieved is a major factor to consider in making a fee award." *Pinto*, 2007 WL 853431, at *7 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *see also King Resources*, 420 F. Supp. at 630 ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990)).

The results achieved here fully support the requested fee. Class counsel, through their efforts, have achieved monetary benefits of approximately $650,000, plus important injunctive relief for the coin collecting public. This settlement is a significant achievement and means that instead of facing additional years of costly litigation, class members can obtain the injunctive relief they sought, as well as a fund to further numismatic education, both of which will  benefit the class and produce changes in the way "First Strikes" coins are presented to the coin-buying public. There is little doubt that this settlement is a substantial positive result of hard fought litigation and negotiation.

Moreover, when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider both the compensatory relief and the

economic value of any prospective injunctive relief obtained for the class. *See, e.g., Staton v. Boeing, Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("Courts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees") (internal quotation and citation omitted); *Sheppard*, 2002 WL 2003206, at *7 (in valuing total settlement for percentage-based attorneys' fee award, court included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *Steiner*, 2001 WL 604035, at *4 ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit.").

In addition to a monetary recovery, important injunctive relief has been obtained for the Class. Indeed, if plaintiffs had received no monetary damages in these settlements, Class Counsel would still have been entitled to attorneys' fees for obtaining the injunctive relief. *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Congress made clear that it intended that the amount of fees awarded under [the Civil Rights Act] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature.") (internal quotations omitted) (emphasis in original). While Class Counsel is eligible to seek fees based on the non-monetary relief obtained, the fee requested is fully justified without reliance on the value of the injunctive relief obtained.

**F.      The Time and Labor of Class Counsel**

Class counsel have expended over 350 hours investigating the allegations, reviewing documents, propounding and taking discovery, and negotiating and documenting this settlement. While the lodestar method is not the rule in this Circuit and counsel request a percentage award, an analysis of the time spent on this matter illustrates the fairness of the proposed fee. The aggregate lodestar for class counsel is $174,415. On a lodestar basis, the requested fee of $195,000 is little more than the actual billing value of the attorneys' time.

In a pre-*Camden I* case in this District, Judge King performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multiples in large and complicated class actions range from 2.26 to 4.5, while "three appears to be the average." *Behrens v. Wometco Enter., Inc.,* 118 R.R.D. 534 (S.D. Fla) 1988). In fact, cases with much higher multipliers have been found reasonable in numerous other class actions. *See, e.g., Grimshawe v. New York Life Insurance Co.*, Case No. 96-0746-Civ-Nesbitt (S.D. Fla. 1996) (percentage-based fee award equivalent to a multiple of 8.5); *Weiss v. Mercedes-Benz of N. America, Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in multiplier of 9.3); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 285, 288, 292 (D.N.J. 2000) (awarding 8% fee based on $3,250,000,000 settlement, representing 32.7 multiplier); *In re Rite-Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (awarding 25% fee representing 10.73 multiplier); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (multiplier of 6); *Muchnick v.*

*First Fed. Savings & Loan Assoc.*, Civ. A. No. 86-1104 (E.D. Pa. Sept. 30, 1986) (multiplier of 8.4); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 169 (S.D.N.Y. 1991) (8.84 multiplier); *Perera v. Chiron Corp.*, Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000) (9.14 multiplier); *Newman v. Caribiner Int'l, Inc.*, No. 99 CIV 2271 (S.D.N.Y. Oct. 19, 2001) (7.7 multiplier). Therefore, the requested fees are more than reasonable in light of the time and labor involved.

### G.  The Reaction of the Class

Out of the hundreds of class members who have received notice, class counsel have received no objections to the payment of the attorneys' fees requested. The absence of any objections indicates the overwhelming support of the class. *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class (*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the class); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (settlement approval affirmed despite objections by half of the current employee class).

### IV.  A SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS APPROPRIATE.

Class Counsel request the Court to approve a service award in the amount of $7,500 for Representative Plaintiff Thomas Francisco. The mailed and published notices advised class

members that Representative Plaintiffs' Counsel would apply for service awards totaling $7,500, and no objections were received.

The class representative diligently and completely fulfilled his obligations as representative for the class. He stepped forward and pursued the classes' interests by filing suit on behalf of Class Members and undertaking the responsibilities attendant upon serving as class representative. He was involved in the negotiations and decision making and participated in discovery, including sitting for deposition.

Numerous courts, including this one, have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred. *See e.g., Pinto*, 2007 WL 853431, at *9; *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp 2d 1185, 1218-19 (S.D. Fla. 2006). In *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990), the court, in approving special awards to class representative plaintiffs, noted:

> Last, the Court agrees that special awards to the class representatives are appropriate. First, they have rendered a public service by contributing to the vitality of the federal Securities Acts. "Private litigation aids effective enforcement of the securities laws because private plaintiffs prosecute violations that might otherwise go undetected due to the SEC's limited resources." Second, the named plaintiffs, through their vigilance, have conferred a monetary benefit on a large class of purchasers of SmithKline common stock.

*Id*. at 535 (citations omitted). *Accord In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) (incentive awards of $20,000

to each of two plaintiffs); *In re REVCO Sec. Litig.*, *Arsam Co. v. Salomon Bros., Inc.*, Master File No. 851, Case No. 89CV593, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992) ($200,000 to the named plaintiff); and *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 to each class representative, aggregate award of $300,000).

Thus, given the ample authority, we respectfully request the Court to grant a service award of $7,500 to the Class Representative Plaintiff.

## V.  CONCLUSION

Class counsel have generated a $650,000 settlement and substantial changes to NGC's practice of grading certain bullion coins as "First Strikes," despite a highly risky case with substantial legal obstacles.  This fee request is modest in proportion to the recovery, and well within the guidelines of case precedent, and their expenses are reasonable under the circumstances.  Their fee and expense request, and the Class Representative's modest incentive request, should therefore be granted.

Respectfully submitted**,**

Charles R. Lipcon, Esq.                    KOZYAK TROPIN & THROCKMORTON, P.A.
Tonya Jean Meister, Esq.                   Co-Counsel for Plaintiff
Lipcon, Margulies & Alsina, P.A.           2525 Ponce de Leon, 9th Floor
Counsel for Plaintiff                      Coral Gables, Florida 33134
One Biscayne Tower, Suite 2480             (305) 372-1800  (305) 372-3508 - fax
2 South Biscayne Boulevard
Miami, Florida 33131
(305) 373-3016 (305) 373-6204 – fax        By: /s/Thomas A. Tucker Ronzetti, Esq.
                                             Thomas A. Tucker Ronzetti, Esq.
                                             Florida Bar No. 965723
David H. Pollack, Esq.                       David Buckner, Esq.
Law Office of David H. Pollack               Florida Bar No. 60550
Co-counsel for Plaintiff
540 Brickell Key Drive, Suite C-1
Miami, Florida 33131
(305) 373-5900
(305) 372-5904 – fax
DavidHPollack@aol.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Thomas A. Tucker Ronzetti